IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
                              )
BRUCE M. McLAUGHLIN,          )
                              )
     Plaintiff,               )
                              )
     v.                       )    1:05CV00203
                              )
ANTHONY J. PRINCIPI, Secretary )
of Department of Veterans     )
Affairs,                      )
JAMES D. SHELTON, Supervisor, )
TED IRBY, Team Coach,         )
JERRY IRELAND, HRM,           )
TANYA B. BURTON, Staff        )
Attorney,                     )
DEPARTMENT OF VETERANS AFFAIRS, )
                              )
     Defendants.              )
```

MEMORANDUM OPINION

OSTEEN, District Judge

Plaintiff Bruce M. McLaughlin filed this action against

Defendants Anthony J. Principi, in his official capacity as

Secretary of the Department of Veterans Affairs ("Department"),

and the Department of Veterans Affairs alleging discrimination

based on age and disability. Plaintiff's complaint also listed

as defendants three Department employees, James D. Shelton,

supervisor; Ted Irby, team coach; and Jerry Ireland, HRM,

(collectively, "Defendants").[1] Pending before this court is

---

[1] Plaintiff also brings a claim against the Department's
staff attorney, Tanya B. Burton. This claim, however, is for
(continued...)

Defendants' motion for summary judgment. For the reasons stated below, the court will grant Defendants' motion.

## I. FACTUAL BACKGROUND

In January 2002, the Department posted a vacancy announcement for a file clerk position (a nonpermanent term appointment). See Compl. Ex. 1; Defs.' Mot. Summ. J. ("Defs.' Mot.") Ex. A, Attach. 6. Plaintiff Bruce M. McLaughlin applied for the position and was subsequently hired as a term employee with a "not to exceed" (NTE) date of January 28, 2003. (Defs.' Mot. Ex. A, Attach. 7.) Plaintiff began work at the Department's office on the morning of January 28, 2002.

In or around April 2002, James D. Shelton became Plaintiff's supervisor. Mr. Shelton and Plaintiff had conflicting personalities, and Plaintiff felt as though he was the brunt of Mr. Shelton's jokes and the target of his snide remarks. (Compl. at 2.) Then, on or about August 20, 2002, Plaintiff injured his knee while pushing a mail cart.[2] Plaintiff was diagnosed with crepitates (popping) of the knee. (Id. at 3.) Due to his

------

[1](...continued)
perjury. Since the Government has prosecutorial discretion over criminal matters, a private plaintiff cannot sue to have Ms. Burton fined or imprisoned. This holds true for any remedial measure sought by Plaintiff which involves criminal punishment.

[2] The facts are disputed as to the knee injury. Plaintiff claims he injured his knee on the job while moving a cart full of mail and file folders. Plaintiff's supervisor testified that he was told the injury occurred while Plaintiff was doing yard work at home. (Defs.' Mot. Ex. D at 7-8.)

injury, Plaintiff was absent from work for a series of weeks on doctor's orders.[3]

At the end of Plaintiff's employment period, Defendants decided not to extend his term. Defendants argue that this decision was made based on the unsatisfactory performance rating Plaintiff received on his ten-month review and his poor performance in the workplace. (Defs.' Mot. Ex. A, Attach. 15; Defs.' Mot. Ex. C at 5.) Defendants, however, gave Plaintiff a satisfactory review for the employment period of January 28–September 30, 2002. (Defs.' Mot. Ex. A, Attach. 14.)[4] As a result of not being retained past his employment term, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging, inter alia, age and disability discrimination. (Defs.' Mot. Ex. A, Attach. 2-3.)

## II.  PROCEDURAL HISTORY

Plaintiff filed an initial complaint with the EEOC alleging discrimination, retaliation, and harassment. An EEO officer investigated the complaint and determined that Defendants' decision not to offer Plaintiff a permanent position "was based

---

[3] It appears that Plaintiff was authorized for a series of two weeks off on October 7, 2002; November 1, 2002; November 16, 2002; and December 2, 2002. (Compl. at 5-6, 8.)

[4] Defendants conducted a routine spot check of Plaintiff's files and work area that revealed, among other things, folders piled on top of cabinets, pieces of mail unfiled, and expired PT charge cards in cabinets. (Defs.' Mot. Ex. A, Attach. 13.)

3

on legitimate, non-discriminatory reasons." (Defs.' Mot. Ex. A, Attach. 4.) Moreover, the investigator concluded that Defendants' decision was not a pretext for discrimination since Plaintiff produced no direct evidence showing a discriminatory bias.[5] (Defs.' Mot. Ex. A, Attach. 4.)

Plaintiff challenged the EEO investigator's report by filing a formal complaint with the EEOC. (Defs.' Mot. Ex. A, Attach. 5.) In response to Plaintiff's complaint, the Department moved for summary judgment. An administrative judge ("AJ") granted the Department's motion without a hearing. (Defs.' Mot. Ex. A, Attach. 5.) A final agency decision was issued based on the AJ's determination. (Defs.' Mot. Ex. A ¶ 7.) Plaintiff appealed the final order to the EEOC's Office of Federal Operations ("OFO"), and the OFO affirmed the AJ's decision. (Id.) After being unsuccessful with his claims at the administrative level, Plaintiff filed a complaint with this court.

## III. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issues of material facts exist, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

---

[5] Plaintiff even stated that nobody said anything derogatory about his age or medical condition. (Defs.' Mot. Ex. A, Attach. 5.)

4

477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue does not remain for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a <u>genuine issue for trial</u>."

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986) (citations & footnote omitted) (quoting Fed. R. Civ. P. 56). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. <u>Id.</u> at 255, 106 S. Ct. at 2513. However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

5

**IV.  ANALYSIS**

Plaintiff, a <u>pro se</u> party proceeding <u>in forma pauperis</u>, submitted a complaint to this court containing a number of different factual allegations and legal issues.  When reviewing a <u>pro se</u> complaint, federal courts should examine carefully the plaintiff's factual allegations, and not summarily dismiss the complaint "unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1977) (citing <u>Colney v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957)); <u>see also</u> <u>Boag v. MacDougall</u>, 454 U.S. 364, 365, 102 S. Ct. 700, 701 (1982) (federal courts should construe a <u>pro se</u> petitioner's pleading liberally, no matter how inartful).

In this case, Plaintiff's complaint does not set out specific causes of action; however, Plaintiff noted that he sought compensation using the following chart:

| | |
|---|---|
| ADA (including disparate treatment | $500,000 |
| Rehabilitation Act of 1973 Section 301 | $500,000 |
| ADEA | $300,000 |
| Retaliation | $800,000 |
| Harassment | $250,000 |
| Compensatory | $300,000 |
| Breach of Employment Contract | $150,000 |
| Constructive Discharge | $200,000 |

(Compl. at 17.)  Of the claims listed above, the court will first address those originally filed with the EEOC (those for age and disability discrimination as well as the claims for harassment, retaliation and accommodation), and then address the remainder of the claims.  The court concludes that summary judgment is appropriate on all matters because Plaintiff failed to set out a

6

prima facie case for age discrimination, disability
discrimination, retaliation, harassment, and failure to provide
reasonable accommodation, and because Plaintiff failed to exhaust
available administrative remedies for the remaining causes of
action.

**A.   Disability Discrimination**

Plaintiff's major claim against Defendants is one for
disability discrimination under the Americans with Disabilities
Act ("ADA") and Rehabilitation Act of 1973.  In his complaint,
Plaintiff maintains that Defendants did not offer him continued
employment on account of his age and disability.  The Fourth
Circuit applies the McDonnell Douglas scheme of proof to ADA
claims in instances "where the defendant disavows any reliance on
discriminatory reasons for its adverse employment action."  Ennis
v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57-58
(4th Cir. 1995) (citing McDonnell Douglas Corp. v. Green, 411
U.S. 792, 93 S. Ct. 1817 (1973)).

Under the McDonnell Douglas test, the plaintiff bears the
burden of production and must establish a prima facie case of
discrimination by the preponderance of the evidence.  Runnebaum
v. NationsBank of Md., 123 F.3d 156, 164 (4th Cir. 1997)
(citation omitted).  After meeting this burden, a plaintiff
creates a rebuttable presumption that the employer unlawfully
discriminated against him.  Id. (citation and internal quotations
omitted).  Then, the employer must set forth reasons for its
action which would "support a finding that unlawful

7

discrimination was not the cause for the employment action." Id.
(citations and internal quotations omitted). Once the employer
meets this burden, the presumption of discrimination "drops from
the case," and the plaintiff must show that the articulated
reason is a pretext for discrimination. Id. (citing Tex. Dep't
of Cmty. Affairs v. Burdine, 450 U.S. 248, 255, 101 S. Ct. 1089,
1094-95 (1981)). In cases like these, the plaintiff still bears
the burden of proof, meaning that summary judgment is appropriate
unless he presents adequate evidence that the employer unlawfully
discriminated. Id. (citing St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 506-11, 113 S. Ct. 2742, 2747-49 (1993)).

In order to establish a prima facie case of discrimination
under the ADA, a plaintiff must show by a preponderance of the
evidence that: "(1) she was a member of the protected class; (2)
she was discharged; (3) at the time of the discharge, she was
performing her job at a level that met her employer's legitimate
expectations; and (4) her discharge occurred under circumstances
that raise a reasonable inference of unlawful discrimination."
Ennis, 53 F.3d at 58 (citations omitted). In order to defeat
summary judgment, a plaintiff must offer more than mere
unsupported speculation. Id. at 62. There must be evidence on
which the jury could reasonably find for the plaintiff because
"the mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient." Runnebaum, 123 F.3d
at 164 (citation and internal quotations omitted).

8

The first two elements are not the subject of great dispute, so the court will assume that these elements are satisfied.[6] Plaintiff, therefore, must show that he was meeting Defendants' legitimate expectations at the time he was not offered continued employment. Plaintiff suggests that his "successful" rating on the September 30, 2002, performance appraisal proves he was meeting his employer's expectations. See Defs.' Mot. Ex. A, Attach. 14. Moreover, Plaintiff claims that his one-day training of a VSR in October confirms he was performing his job at a satisfactory level. (Compl. at 5.) These two instances, however, do not represent a preponderance of the evidence. The September performance appraisal was a very simple two-tiered rating system (allowing for a rating of successful or unacceptable) and cannot possibly serve as a reliable way to measure Plaintiff's work. Additionally, this review was not conducted "at the time" of Defendants' decision not to rehire Plaintiff, but rather three to four months earlier.

The majority of the evidence demonstrates that Plaintiff was not meeting his employer's expectations. According to a ten-month performance review, the Department rated Plaintiff's performance, conduct, and general traits of character as unsatisfactory. (Defs.' Mot. Ex. A, Attach. 15.) The review stated that Plaintiff exhibited a poor work ethic and was the

---

[6] The court recognizes that there may be disagreement as to whether Defendants "discharged" Plaintiff since Plaintiff's term expired by contract. The assumption in favor of Plaintiff, however, does not prejudice Defendants since Plaintiff fails to satisfy the additional elements.

subject of numerous complaints by multiple coworkers. (<u>Id.</u>)
Defendants' report also concluded that Plaintiff should not be
retained beyond the probationary period. (<u>Id.</u>)  In addition to
the review, Defendants performed an inspection of Plaintiff's
work space in October that showed a number of deficiencies in his
work. (Defs.' Mot. Ex. A, Attach. 13.)  Plaintiff even
acknowledged that he was always catching up, while his coworkers
always had time to do the same tasks. (Defs.' Mot. Ex. A,
Attach. 2 at 10, 12.)  He mentioned instances where he had rocky
relations with coworkers and superiors. (<u>Id.</u>)  Additionally,
Plaintiff recalled circumstances when he did not get along with
or comply with his supervisor. (Defs.' Mot. Ex. A, Attach. 2;
Ex. B at 2.)  Looking at the facts of this case, even when viewed
in a light most favorable to Plaintiff, the court finds that
Plaintiff failed to establish a prima facie case of
discrimination.[7]

**B. Age Discrimination**

Plaintiff also claims that Defendants discriminated against
him based on his age (over 40 years old).  Courts analyze age
discrimination claims under the same burden-shifting framework
used to resolve other discrimination cases.  <u>Laber v. Harvey</u>, 438
F.3d 404, 430 (4th Cir. 2006).  The elements for a prima facie

---

[7] Though it is unnecessary to discuss the fourth prong of
the test, it is important to note that Plaintiff's "discharge"
did not occur under suspect circumstances, but rather at the end
of a contractual period.

case in an age discrimination case are similar to those used in a disability discrimination case.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 113, 115-17, 120 S. Ct. 2097, 2105-06 (2000).  In order to establish a prima facie case of unlawful age discrimination, a plaintiff must show that "(1) he is a member of the protected class; (2) he was qualified for the job and met [the employer's] legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications."  Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13, 116 S. Ct. 1307, 1310 (1996).

Though Plaintiff is in a protected age class, he fails to satisfy any of the additional elements.  As the court stated in Section IV, Part A supra, Plaintiff failed to meet Defendants' legitimate expectations.  Moreover, Defendants' management decisions do not allow for an inference of age discrimination. In fact, Defendants extended a permanent position in Plaintiff's department to a woman older than Plaintiff.  (Defs.' Mot. Ex. A, Attach. 4 at 7).  Plaintiff's superiors were both over 40 years old, and 24 of the 30 career employees working in the same department were over the age of 40.  (Id. at 3-5.)

In addition to the lack of circumstantial evidence supporting a discrimination claim, Plaintiff also cannot point to an incidence where anyone made negative comments about his age or

11

disability.  In his deposition he stated:  "[t]heir attitude as far as negative comments, ok, that's a broad range.  The [sic] didn't actually say you're a cripple, you're an old geezer . . . .  But they did reflect in their attitude."  (Defs.' Mot. Ex. A, Attach. 5 at 4.)  Plaintiff presents no substantive evidence that would allow a reasonable jury to conclude Defendants discriminated against him.  Plaintiff only offers his own suppositions to support his claims, and "mere conclusory allegations . . . are not evidence and cannot by themselves create a genuine issue of material fact."  Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); see also Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (A pro se plaintiff's complaint is insufficient when it contains "wholly conclusory and inconsistent allegations.").  Accordingly, this court finds that Plaintiff has not established a prima facie case with respect to age discrimination and granting summary judgment is therefore appropriate.

    **C.  Accommodation under Rehabilitation Act of 1973**

    Plaintiff brought a claim under section 301 of the Rehabilitation Act of 1973, 29 U.S.C. § 771 ("Act").  This section involves the distribution of federal grant money and contracts for projects geared toward training and rehabilitating people with disabilities.  See 29 U.S.C. § 771 (2006).  The court, however, will assume that the citation to this act involves Plaintiff's accommodation claim.  Plaintiff alleges that

Defendants discriminated against him by not accommodating his disability in violation of the Act.

In order to establish a prima facie case of disability discrimination for failing to accommodate, a plaintiff must establish: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Rhoads v. FDIC, 257 F.3d 373, 387 (4th Cir. 2001) (citation and internal quotations omitted).

The first prong of this test requires an individual to have a disability. Under the Act, a disability is "a physical or mental impairment that substantially limits one or more major life activities."[8] 29 U.S.C. § 705(9)(B) (2006). The EEOC defines "substantially limits" as "unable to perform a major life activity that the average person in the general population can perform." 29 C.F.R. § 1630.2(j)(1)(i) (2006). It can also mean "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can

---

[8] The definition of disability under the ADA is the same as that under the Rehabilitation Act of 1973. See 42 U.S.C. § 12102(2)(A) (2006) ("A physical or mental impairment that substantially limits one or more of the major life activities."). Therefore, courts use these definitions interchangeably.

13

perform that same major life activity." 29 C.F.R. §
1630.2(j)(1)(ii) (2006). Likewise, "major life activity" is
defined as "caring for oneself, performing manual tasks, walking,
seeing, hearing, speaking, breathing, learning, and working." 29
C.F.R. § 1630.2(i) (2006).

When analyzing an individual's injury to determine if it
qualifies as one that substantially limits a major life activity,
the following factors are used: "(i) The nature and severity of
the impairment, (ii) The duration or expected duration of the
impairment; and (iii) The permanent or long term impact . . .
resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (2006).
These factors exist to create a significant threshold in order to
prevent a loose standard for determining disability. See Toyota
Motor Mfg. v. Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 691
(2002) (the first section of the ADA confirms that "these terms
need to be interpreted strictly to create a demanding standard
for qualifying as disabled.").

In this case, Plaintiff suffered an injury to his knee,[9]
which he claims qualified him as an individual with a disability.
He produced as evidence, doctors' notes that restricted him from
bending, stooping, kneeling, and lifting twenty-five pounds or
more. (Pl.'s Resp., Attach. B, CE 18.) He also contends that a
doctor's report containing a written account of total disability

---

[9] Though Plaintiff had a prosthetic hip, he claimed that it
did not limit him in any manner, and that "[his] left hip did not
bother [him] at all." (Defs.' Mot. Ex. A, Attach. 5 at 8.)

for a period of six weeks is sufficient under the statute to meet the definition.

Plaintiff's injured knee, however, did not result in a limitation of major life activity.  In order to suffer a limitation on a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Toyota Motor Mfg., 534 U.S. at 198, 122 S. Ct. at 691.  A plaintiff must prove a disability by providing evidence that the extent of his limitation is substantial; "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment."  Id.

Plaintiff supports his claim only by offering reports from medical doctors with notes saying "totally disabled" for two-week periods of time.  Such records are not sufficient under modern precedent.  Plaintiff also claims that his life activities were limited because he "had a hard time [s]itting on a [t]oilet, difficulty walking, bathing, walking to my mailbox, putting on socks & shoes, scratching my foot, clipping nails, getting on my knees to retrieve something, or just simply bending my knee, and yes . . . SEX."  (Pl.'s Resp. at 10-11.)  None of these activities are of the type that the courts recognize as major life activities.[10]

_____

[10] Though walking is a major life activity, "difficulty walking" is not a severe enough condition to warrant a
(continued...)

15

Plaintiff's injury also does not meet the test for disability because his condition was not one of significant duration or severity to qualify as "substantially limiting." The Supreme Court interprets "substantially limiting" to mean that "[t]he impairment's impact must also be permanent or long-term." Toyota Motor Mfg., 534 U.S. at 198, 122 S. Ct. at 691 (citing 29 C.F.R. § 1630.2(j)(2) (2001)). Here, Plaintiff's injury only required two weeks off of work for physical therapy.[11] He was able to resume work with a twenty-five-pound lifting restriction for periods of time before re-injuring the same knee. This is certainly not the type of injury Congress pictured when passing the Act. Moreover, the Fourth Circuit has held "as a matter of law, that a twenty-five-pound lifting limitation–particularly when compared to an average person's abilities–does not constitute a significant restriction on one's ability to . . . perform [a] major life activity." Williams v. Channel Master

---

[10](...continued)
disability. See Williams v. Channel Master Satellite Sys., 101 F.3d 346 (4th Cir. 1996). This court has also recognized that reproduction is a major life activity, but has declined to address whether sexual activity falls into the same category. Newby v. Whitman, 340 F. Supp. 2d 637, 655 (M.D.N.C. 2004). Since the Fourth Circuit stated that it was "not convinced that engaging in intimate sexual relations falls within the statutory rubric of the major life activities," this court will follow the same reasoning. Runnebaum v. Nationsbank of Md., 123 F.3d 156, 171 (4th Cir. 1997).

[11] Plaintiff's doctors excused him from work for multiple periods of two weeks because he could not get approved for physical therapy from Defendants.

<u>Satellite Sys.</u>, 101 F.3d 346, 349 (4th Cir. 1996).[12] Summary judgment is therefore appropriate because Plaintiff failed to establish a prima facie case for a failure to accommodate under the Rehabilitation Act.

**D. Retaliation**

Plaintiff claims that the termination of his position was in retaliation for filing a worker's compensation claim. (Pl.'s Resp. at 11.) The Fourth Circuit has never expressly held that Title VII or the ADEA gives federal employees the right to bring a retaliation suit but has assumed that such a right exists. <u>Laber v. Harvey</u>, 438 F.3d 404, n.30 (4th Cir. 2006); <u>Baqir v. Principi</u>, 434 F.3d 733, 747 n.16 (4th Cir. 2006). This court, therefore, will adopt the same assumption for the disposition of this case.

In order to establish a prima facie case for retaliation, a plaintiff must prove: "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events." <u>EEOC v. Navy Fed. Credit Union</u>, 424 F.3d 397, 405-06 (4th Cir. 2005). If the employer provides a non-retaliatory reason for its action, the burden shifts to the plaintiff to show that the employer's proffered reason is pretextual and that the employer's motivation was retaliatory. <u>Price v. Thompson</u>, 380 F.3d 209, 212 (4th Cir. 2004). Plaintiff fails to establish a

---

[12] In fact, this court has held that a fifteen-pound lifting restriction was not sufficient to qualify as a disability. <u>See</u> <u>McKiver v. General Elec. Co.</u>, 11 F. Supp. 2d 755 (M.D.N.C. 1997).

prima facie case for retaliation because he cannot show an
adverse employment action taken against him and, assuming that
there was such an action, that it was related to the claim he
filed.

Plaintiff argues that Defendants' decision not to offer him
a permanent position at the end of his temporary term qualifies
as an adverse employment action.  An adverse employment action is
a discriminatory act that "alter[s] the terms, conditions, or
benefits of employment," as well as "ultimate employment
decisions such as hiring, granting leave, discharging, promoting
and compensating."  Von Gunten v. Md., 243 F.3d 858, 865-66 (4th
Cir. 2001).  Defendants did not take an adverse employment action
against Plaintiff because the decision not to retain him on a
permanent basis did not alter the terms, conditions, or benefits
of his employment.  Plaintiff was hired on a temporary basis for
a term not to exceed January 28, 2003 (one year's time).[13]
According to the terms of employment, Plaintiff's temporary
position specifically stated that it did not carry any promise of
permanent employment. (Defs.' Mot. Ex. A, Attach. 8.)
Furthermore, Plaintiff's employment could be terminated before
the NTE date for circumstances including, inter alia, lack of

_____

[13] The contracts for Plaintiff's employment are very
difficult to read in harmony with each other.  The job posting
and confirmation letter from the Department are the most
favorable contracts for Plaintiff, as they provide for employment
up until January 28, 2003. (Defs.' Mot. Ex. A, Attach. 7, 9.)
The letter that Plaintiff signed, however, only purports to
provide employment through the 30th of an undecipherable month in
2002. (Defs.' Mot. Ex. A, Attach. 8.)

work, lack of funds, lack of FTEE ceiling, and <u>unsatisfactory performance/conduct</u>. (<u>Id.</u> (emphasis added)).[14]

Assuming that Defendant's decision not to offer Plaintiff a permanent position qualifies as an adverse employment action, Plaintiff's retaliation charge still fails. In order to bring a successful claim for retaliation, Plaintiff must show a causal link between Plaintiff's worker's compensation claim filing and Defendants' decision not to offer him permanent employment. <u>EEOC</u>, 424 F.3d at 405-06. Plaintiff must offer some substantial evidence to support this claim because "[a] plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case." <u>Mackey v. Shalala</u>, 360 F.3d 463, 469-70 (4th Cir. 2004).

In this case, Defendants offer a rational basis for not extending a permanent opportunity to Plaintiff. Based on a ten-month performance review, Defendants rated Plaintiff's performance, conduct, and general traits of character as unsatisfactory. (Defs.' Mot. Ex. A, Attach. 15.) In addition, the review stated that Plaintiff exhibited a poor work ethic and

---

[14] Plaintiff acknowledged these terms by signing an employment document and offers no legitimate evidence to the contrary. Plaintiff claims that he signed his name on the document where it stated "I have read the above and fully understand it" not for the purpose of agreeing to the terms, but just that he read and understood them. (Pl.'s Resp. at 2.) Despite this contention, to understand means "to accept as fact or truth" or "to believe or infer something to be the case." <u>Merriam-Webster's Third New International Dictionary</u> 2490 (3rd ed. 1989). To have an understanding in legal terms, means to form a valid contract in an informal manner. <u>See</u> <u>Black's Law Dictionary</u> 1526 (6th ed. 1990).

that he was the subject of numerous complaints by multiple coworkers. (Id.) Plaintiff even acknowledged that he was always catching up, while his coworkers always had time to do the same tasks. (Defs.' Mot. Ex. A, Attach. 2 at 10, 12.) He also mentioned that he had rocky relations with coworkers and superiors. (Id.) In fact, Plaintiff stated that one of the reasons he felt he was let go was because his employment had come to an end and the Department did not want to renew his contract. (Defs.' Mot. Ex. A, Attach. 5 at 8.) Plaintiff offers no proof other than his own self-serving opinions to support a retaliation claim which are not sufficient to withstand a motion for summary judgment. The court, therefore, finds that Plaintiff failed to establish a prima facie case for retaliation.

> **E. Harassment**

Plaintiff also seeks redress from Defendants for harassment in the workplace under Title VII, 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of harassment, an employee must prove the following: "(1) that she was harassed because of her [protected characteristic]; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." Smith v. First Union Nat'l Bank, 202 F.3d 234, 241-42 (4th Cir. 2000) (citation and internal quotations omitted). Since Plaintiff claims he was harassed by unwelcome remarks from a supervisor on

20

account of his age and disability, the court will not address the
first two prongs.

Despite Plaintiff's allegations, his supervisor's unwelcome
comments were not of the type that create an abusive work
environment.  When determining whether a work environment is
hostile or abusive, courts take into consideration the totality
of the circumstances.  Id. at 242.  Among these circumstances
are:  "(1) the frequency of the discriminatory conduct; (2) its
severity; (3) whether it is physically threatening or
humiliating, or a mere offensive utterance; and (4) whether it
unreasonably interferes with an employee's work performance."
Id.

Plaintiff states that he was the target of frequent comments
relating to his work performance.  None of these comments related
to Plaintiff's age or disability (assuming he was even viewed as
disabled).  Plaintiff's supervisor would say things such as:
"Are we getting anything done today?"; "Are ya' making your
rounds?"; and "You gotta catch up on your numbers."  (Compl. at
2.)  These types of comments not only fail to reach a level of
vulgarity or perversity required to create a hostile work
environment, but they are also unrelated to Plaintiff's age or
health condition.  Instead, such comments reflect the
supervisor's opinion of Plaintiff's work ethic, if anything.
Assuming that all the "snide remarks" referred to by Plaintiff
are true, they "are so trivial, so isolated, and so far from the
paradigmatic case of [age/disability] harassment, that summary

21

judgment [is] clearly appropriate." <u>Hartsell v. Duplex Prods.</u>,
123 F.3d 766, 773 (4th Cir. 1997). Accordingly, this court finds
that Plaintiff fails to make a prima facie case for harassment.

### F.    Exhaustion of Administrative Remedies

As a general rule, "no one is entitled to judicial relief
for a supposed or threatened injury until the prescribed
administrative remedy has been exhausted." <u>Myers v. Bethlehem
Shipbuilding Corp.</u>, 303 U.S. 41, 50-51, 58 S. Ct. 459, 463-64
(1938) (quotations omitted). Adherence to this rule is important
because it allows specialized agencies to handle specific issues
of law, thereby preventing multiple interpretations of an
agency's regulatory statute. <u>See</u> <u>Garner v. Teamsters, Chauffeurs
& Helpers Local Union</u>, 346 U.S. 485, 490-91, 74 S. Ct. 161, 165-
66 (1953) ("A multiplicity of tribunals and a diversity of
procedures are quite as apt to produce incompatible or
conflicting adjudications as are different rules of substantive
law.").

Plaintiff's claims for breach of employment contract and
"compensatory"[15] must first be pursued at the administrative
level.[16] (Compl. At 15.) There is no evidence in the record

---

[15] The court is unsure of what Plaintiff is claiming for
"compensatory," but analysis of the brief and complaint would
favor interpreting this as a claim for worker's compensation for
his work-related injury.

[16] Plaintiff also brings a claim for constructive discharge,
but offers no factual support to maintain such a claim,
especially considering that Defendants employed him for the
entire term of his contract. Analysis on this claim, therefore,
is not appropriate.

that either of these claims were appropriately addressed before the proper administrative agency. This court, therefore, lacks jurisdiction to hear these claims.

**V.    CONCLUSION**

In order for his claims to survive summary judgment, Plaintiff must establish a prima facie case for each claim. Plaintiff failed to satisfy this burden. Additionally, Plaintiff attempted to bring claims before this court without first exhausting his administrative remedies (or showing why the pursuit of administrative remedies was futile).

For the reasons stated above, Defendants' motion for summary judgment will be granted.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 3rd day of October 2006.


_____
United States District Judge